17-CV-9066 (AKH) (SN)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

=====================================================

JASON AGOSTO,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION and
MANUEL UREÑA, Principal of the High School of Art and
Design,

Defendants.

=====================================================

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

=====================================================

### GLASS & HOGROGIAN LLP
Attorneys for Plaintiff Jason Agosto
85 Broad Street, 18th Floor @ Wework
New York, NY 10004

Bryan D. Glass, Esq.
Jordan F. Harlow, Esq.
Tel: 212-537-6859
bglass@ghnylaw.com
jharlow@ghnylaw.com


Served July 15, 2019

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ............................................................................. iii

INTRODUCTION .............................................................................................1

THE STANDARD FOR SUMMARY JUDGMENT .........................................2

ARGUMENT…………............................................................................................3

POINT I

SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS FOR FIRST AMENDMENT
RETALIATION SHOULD BE DENIED............................................................3

    A. Plaintiff Has Established That He Engaged In Protected Speech......................4

    B. Actionable Adverse Actions Were Taken Against Plaintiff ............................13

    C. There Is A Causal Nexus Between Plaintiff's Protected Activity
       And Adverse Treatment....................................................................15

    D. Plaintiff Has Demonstrated A Municipal Policy Or Practice .........................21

    E. Defendant Ureña Is Not Entitled To Qualified Immunity................................23

POINT II

SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS FOR HOSTILE
WORK ENVIRONMENT AND RETALIATION UNDER TITLE VII AND
THE NYSHRL SHOULD BE DENIED............................................................25

    A. Sufficient Issues of Fact Exist Such That Summary Judgment
       Should Be Denied On Plaintiff's Claims of Hostile Work Environment ........25

    B. Sufficient Issues of Fact Exist Such That Summary Judgment Should
       Be Denied On Plaintiff's Claims of Retaliation ................................................28

POINT III

SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS FOR HOSTILE WORK
ENVIRONMENT AND RETALIATION UNDER THE NYCHRL SHOULD BE
DENIED............................................................................................................30

    A. Sufficient Issues of Fact Exist Such That Summary Judgment Should
       Be Denied On Plaintiff's Claims of Hostile Work Environment ....................30

    B. Sufficient Issues of Fact Exist Such That Summary Judgment Should
       Be Denied On Plaintiff's Claims of Retaliation ................................................31

CONCLUSION…………………………………………………………………………..32

# TABLE OF AUTHORITIES

**CASES**

Albunio v. City of New York,
　16 N.Y.3d 472 (N.Y. 2011) ....................................................................................31

Bart v. Telford,
　677 F.2d 622 (7th Cir. 1982) ..............................................................................14

Barton v. Clancy,
　632 F.3d 9 (1st Cir. 2011)...............................................................................13, 14

Bennett v. Lucier,
　2010 U.S. Dist. LEXIS 130308, at *1-2 (N.D.N.Y. Dec. 9, 2010) , No. 1:07-CV-308 (GLS)(RFT) ..........4, 13, 24

Bermudez v. City of New York,
　783 F. Supp. 2d 560 (S.D.N.Y. 2011).................................................................26

Bowen-Hooks v. City of N.Y.,
　13 F. Supp. 3d 179 (E.D.N.Y. 2014) ..............................................................4, 12

Buckley v. New York,
　959 F.Supp.2d 282 (E.D.N.Y.2013)......................................................................4

Burhans v. Lopez,
　24 F. Supp. 3d 375 (S.D.N.Y. 2014)....................................................................25

Burlington Northern & Santa Fe Railway v. White,
　543 U.S. 53 (2006)................................................................................................29

Caravantes v. 53rd St. Partners, LLC,
　2012 U.S. Dist. LEXIS 120182 (S.D.N.Y. Aug. 23, 2012) ...............................31

City of San Diego v. Roe,
　543 U.S. 77 (2004)................................................................................................13

Clue v. Johnson,
　179 F.3d 57 (2d Cir.1999).......................................................................................4

Cosgrove v. Sears, Roebuck & Co.,
　9 F.3d 1033 (2d Cir. 1993)...................................................................................25

Coszalter v. City of Salem,
　320 F.3d 968 (9th Cir. 2003) ...............................................................................14

Donovan v. Inc. Vill. Of Malverne, 547 F.Supp.2d 210 (E.D.N.Y.2008) ....................................4, 12

Eldridge v. Rochester City Sch. Dist.,
　9968 F. Supp. 2d 546 (W.D.N.Y. 2013)...............................................................22

Fahmy v. Duane Reade, Inc.,
  LEXIS 37703, No. 04-CV-1798, (S.D.N.Y. June 9, 2006) ......................................................29

Feingold v. State of New York,
  366 F.3d 138, 148 (2d Cir. 2004) ..................................................................................2, 26

Ferris v. Delta Air Lines, Inc.,
  277 F.3d 128 (2d Cir. 2001) .................................................................................................26

Fincher v. Depository Trust & Clearing Corp.,
  604 F.3d 712 (2d Cir. 2010) .................................................................................................29

Frisenda v. Inc. Vill. of Malverne,
  775 F. Supp. 2d 486 (E.D.N.Y. 2011) ................................................................................4, 12

Gallo v. Prudential Residential Servs.,
  22 F.3d 1219 (2d Cir.1994) ....................................................................................................2

Garcia v. Hartford Police Dep't,
  706 F.3d 120 (2d Cir.2013) .....................................................................................................3

Granica v. Town of Hamburg,
  2017 WL 664040 (W.D.N.Y. 2017) .....................................................................................21

Gregory v. Daly,
  243 F.3d 687 (2d Cir. 2001) .................................................................................................25

Harlow v. Fitzgerald,
  457 U.S. 800 (1982) ..............................................................................................................23

Heffernan v. Straub,
  612 F.Supp.2d 313 (S.D.N.Y.2009) ..................................................................................4, 12

Hurdle v. Bd. of Educ. for City of New York,
  2003 U.S. Dist. LEXIS 15521, (S.D.N.Y. Sept. 8, 2003) ...................................................22

Husser v. N.Y.C. Dep't of Educ.,
  137 F. Supp. 3d 253 (E.D.N.Y. 2015) .................................................................................32

Johnson v. Perry,
  859 F.3d 156 (2d Cir. 2017) .................................................................................................23

Lennon v. Miller,
  66 F.3d 416 (2d Cir. 1995) ...................................................................................................23

Littlejohn v. City of N.Y.,
  795 F.3d 297 (2d Cir. 2015) .................................................................................................21

Lovell v. Comsewogue Sch. Dist.,
  214 F. Supp. 2d 319 (E.D.N.Y. 2002) .................................................................................22

Lynch v. Ackley,
  811 F.3d 569 (2d Cir. 2016) ............................................................................................13, 24

Marino v. Chester Union Free Sch. Dist.,
   859 F. Supp. 2d 566 (S.D.N.Y. 2012)..................................................................................22

Matthews v. City of New York,
   779 F.3d 167 (2d Cir. 2015)...............................................................................................3

Matusick v. Erie Cnty. Water Auth.,
   757 F.3d 31 (2d Cir. 2014).................................................................................................3

McCowan v HSBC Bank USA, N.A.,
   689 F Supp 2d 390 (E.D.N.Y. 2010) .................................................................................2

Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,
   2011 U.S. Dist. LEXIS 84790, No. 09 Cv. 1251 (DAB) (S.D.N.Y. July 29, 2011) .......................31

Monell v. Dep't of Soc. Servs.,
   436 U.S. 658 (1978).........................................................................................................21

Montero v. City of Yonkers,
   890 F.3d 386 (2018).........................................................................................................24

Patane v. Clark,
   508 F.3d 106 (2d Cir. 2007)..............................................................................................25

Patterson v. County of Oneida,
   375 F.3d 206 (2d Circ. 2004).............................................................................................21

Payne v. Huntington Union Free Sch. Dist.,
   219 F. Supp. 2d 273 (E.D.N.Y. 2002) ................................................................................22

Payson v Bd. of Educ. of Mount Pleasant Cottage Sch.,
   2017 U.S. Dist. LEXIS 154296, at *57 (S.D.N.Y. Sept. 20, 2017) .......................4, 11, 13, 24

Pekowsky v. Yonkers Bd. of Educ.,
   23 F. Supp. 3d 269 (S.D.N.Y. 2014)..................................................................3, 4, 11, 12, 24

Perry v. Slensby,
   2018 U.S. Dist. LEXIS 33602, No. 16-CV-08947 (NSR) (S.D.N.Y. Feb. 28, 2018)...................28

Pieczynski v. Duffy,
   875 F.2d 1331 (7th Cir. 1989) ..........................................................................................14

Rabideau v. Beekmantown Cent. Sch. Dist.,
   89 F. Supp. 2d 263 (N.D.N.Y. 2000)..................................................................................22

Ragin v. E. Ramapo Cent. Sch. Dist.,
   2010 U.S. Dist. LEXIS 32576, (S.D.N.Y. Mar. 31, 2010) ......................................................29

Rivera Jimenez v. Pierluisi,
   362 F.3d 87 (1st Cir. 2004)...........................................................................................13, 14

Rookard v. Health & Hosps. Corp.,
   710 F.2d 41 (2d Cir. 1983)................................................................................................22

Rosario-Urdaz v. Velazco,
  433 F.3d 174 (1st Cir. 2006) .................................................................................................................. 14

Santos v. New York City,
  847 F. Supp. 2d 573 (S.D.N.Y. 2012) ................................................................................................... 21

Siddiqi v. N.Y.C. Health & Hospitals Corp.,
  572 F. Supp. 2d 353 (S.D.N.Y. 2008) ................................................................................................... 29

Singer v. Ferro,
  711 F.3d 334 (2d Cir. 2013) ............................................................................................................. 3, 11

Spavone v. Dep't of Correctional Servs.,
  719 F.3d 127 (2d Cir.2013) .................................................................................................................... 3

T.Z. v. City of New York,
  635 F. Supp. 2d 152 (E.D.N.Y. 2009), rev'd in part on other grounds, 634 F. Supp. 2d 263 (E.D.N.Y. 2009) .......... 22

Taylor v. N.Y.C. Dep't of Educ., 2012 U.S. Dist LEXIS 170917, No. 11-CV-3582 (E.D.N.Y. Nov. 30, 2012) .................... 30

Tepperwien v. Entergy Nuclear Operations, Inc.,
  663 F.3d 556 (2d Cir. 2011) ................................................................................................................. 28

Thompson v. City of N.Y.,
  2002 U.S. Dist. LEXIS 23675 (S.D.N.Y. Dec. 6, 2002) ........................................................................... 29

Torres v. N.Y. Methodist Hosp.,
  2016 U.S. Dist. LEXIS 2365, No. 15 CV 1264 (PKC) (PK), (E.D.N.Y. Jan. 7, 2016) .................................... 26

Weintraub v. Bd. of Educ. Of City Sch. Dist. Of City of N.Y.,
  593 F.3d 196 (2d Cir. 2010) ................................................................................................................... 3

Whidbee v. Garzarelli Food Specialties, Inc.,
  223 F.3d 62(2d Cir. 2000) ...................................................................................................................... 2

Williams v. New York City Hous. Auth.,
  61 A.D.3d (1st Dep't 2009) ............................................................................................................ 31, 32

Zahra v. Town of Southold,
  48 F.3d 674 (2d Cir. 1995) .................................................................................................................. 21

Zambrano-Lamhaouhi v. N.Y.C. Bd. of Educ.,
  866 F. Supp. 2d 147 (E.D.N.Y. 2011) ................................................................................................... 22

Zelnik v. Fashion Inst. of Tech.,
  464 F.3d 217 (2d Cir. 2006) ................................................................................................................. 29

Ziglar v. Abbasi,
  137 S. Ct. 1843 (2017) ........................................................................................................................ 24

**STATUTES**

USCS Const. Amend. 1 ........................................................................................................................... 2

42 U.S.C. § 1983 ("§ 1983") ................................................................................................................... 2

New York City Human Rights Law,
    New York City Administrative Code §§ 8-101, et seq ....................................................................... 2

New York State Human Rights Law,
    N.Y. Executive Law §§ 290, et seq ..................................................................................................... 2

Title VII of the Civil Rights Act of 1964
    42 U.S.C. §§ 2000e, et seq ................................................................................................................. 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JASON AGOSTO,                                    :
                                                 :
                              Plaintiff,         :
                                                 :
              – against –                        :
                                                 :        17-CV-9066 (AKH) (SN)
                                                 :
                                                 :
NEW YORK CITY DEPARTMENT OF                      :
EDUCATION and MANUEL UREÑA, Principal of         :
the High School of Art and Design,               :
                                                 :
                              Defendants.        :
                                                 :
                                                 :
                                                 :
                                                 :
                                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This Memorandum of Law is submitted on behalf of Plaintiff Jason Agosto in Opposition to Defendants' Motion for Summary Judgment.

### Introduction

Defendants' presentation of the record in this case and their arguments on this Motion are combined in a salad of apples compared to oranges, red herrings, cherries carefully picked, misstatements of law, and selective gaping omissions of fact, all tossed together in the kitchen sink. Plaintiff is confident that the Court will see through this "paint on the wall" to the actual picture beneath: an environment where union advocacy is met with reprisal and retribution and where a deceitful, manipulative principal has used sexual harassment and physical intimidation as weapons of retaliation.

1

**The Standard for Summary Judgment**

A moving party is entitled to summary judgment only when there is no genuine issue of any material fact.  Feingold v. State of New York, 366 F.3d at 138, 148 (2d Cir. 2004).  As to any particular issues in which summary judgment is requested, where "there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper."  Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 67 (2d Cir. 2000).

The Second Circuit has also noted that an extra measure of caution is merited in granting or affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions.  McCowan v HSBC Bank USA, N.A., 689 F Supp 2d 390, 397-98 (E.D.N.Y. 2010) citing, Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir.1994).

As set forth below and in Plaintiff's Responses to Defendants' Rule 56.1 Statement and Counter-Statement, to which the Court is referred for a detailed discussion of the facts giving rise to this action, the record in this case is replete with disputed issues of material fact, which, if resolved in Plaintiff's favor, establish that Defendants violated Plaintiff's rights to be free from retaliation and discrimination pursuant to the First Amendment of the United States Constitution, 42 U.S.C. § 1983 ("§ 1983"); Title VII of the Civil Rights Act of 1964 ("Title VII"); New York State Human Rights Law, N.Y. Executive Law §§ 290, et seq. ("NYSHRL"); and New York City Human Rights Law, New York City Administrative Code §§ 8-101, et seq. ("NYCHRL").

Accordingly, Defendants' Motion for Summary Judgment should in all respects be denied.

**POINT I**

**SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS FOR FIRST AMENDMENT RETALIATION SHOULD BE DENIED**

To establish a First Amendment retaliation claim, a public employee must show that he is (1) engaged in protected First Amendment activity, (2) suffered an adverse employment action, and that (3) the protected activity was "at least a substantial or motivating factor in the adverse employment action." Pekowsky v. Yonkers Bd. of Educ., 23 F. Supp. 3d 269, 276 (S.D.N.Y. 2014), citing Garcia v. Hartford Police Dep't, 706 F.3d 120, 130 (2d Cir. 2013) (citation omitted). To recover damages from an individual defendant under 42 U.S.C. § 1983, a plaintiff must establish that defendant's "personal involvement ... in [the] alleged constitutional deprivations." Spavone v. Dep't of Correctional Servs., 719 F.3d 127, 135 (2d Cir. 2013). A defendant may still avoid liability by proving that it would have "undertaken the same adverse employment action even in the absence of the protected conduct." Matusick v. Erie Cnty. Water Auth., 757 F.3d 31, 47 (2d Cir. Jan. 3, 2014).

To determine whether Plaintiff's speech is protected, the Court must first determine whether the subject of his speech was (1) a matter of public concern, and if so, (2) whether she spoke as a private citizen or as a public employee. See Matthews v. City of New York, 779 F.3d 167, 172 (2d Cir. 2015). Matters of public concern are those that relate to "any matter of political, social, or other concerns to the community." See Pekowsky, 23 F. Supp. at 276-77 (citing Singer v. Ferro, 711 F.3d 334, 339 (2d Cir. 2013)). Whether Plaintiff was speaking as a public employee and not a private citizen is a "practical" inquiry. Weintraub v. Bd. of Educ. Of City Sch. Dist. Of City of N.Y., 593 F.3d 196, 202 (2d Cir. 2010). Notably, union advocacy representation on behalf

of other members qualifies as conduct as a private citizen and may be protected under the First Amendment. See Payson v Bd. of Educ. of Mount Pleasant Cottage Sch., 2017 U.S. Dist. LEXIS 154296, at *57; Pekowsky, supra.

Furthermore, union representation or advocacy for another employee, on a matter which did not affect the union representative individually, is a matter of public concern.  Pekowsky 23 F. Supp. at 277-78 (union activity included, inter alia, representing other teachers at a meeting regarding conflicts with management);  Bennett v. Lucier, 2010 U.S. Dist. LEXIS 130308, at *1-2 (N.D.N.Y. Dec. 9, 2010) , No. 1:07-CV-308 (GLS)(RFT) (plaintiff represented and advocated for another teacher, whom he believed had been mistreated).

"There is no doubt that retaliation against public employees solely for their union activities violates the First Amendment." Buckley v. New York, 959 F.Supp.2d 282, 298 (E.D.N.Y. 2013) (emphasis added) (quoting Clue v. Johnson, 179 F.3d 57, 60 (2d Cir. 1999). Therefore, an employee's association with a union, as well as any speech that arises from his or her position in a union, is constitutionally protected under the First Amendment. See, e.g., Heffernan v. Straub, 612 F.Supp. 2d 313, 328 (S.D.N.Y. 2009); Donovan v. Inc. Vill. Of Malverne, 547 F.Supp.2d 210, 218 (E.D.N.Y. 2008); Bowen-Hooks v. City of N.Y., 13 F. Supp. 3d 179, 239 (E.D.N.Y. 2014); Frisenda v. Inc. Vill. of Malverne, 775 F. Supp. 2d 486, 509–10 (E.D.N.Y. 2011).

### A.  Plaintiff Has Established That He Engaged In Protected Speech

In 2005, Plaintiff became the Social Studies Representative on the Consultation Committee with the High School for Art and Design ("HSAD") on behalf the United Federation of Teachers

("UFT"). <u>See</u> Exhibit 3, Agosto Deposition, at 11:4-12.   In 2007, Plaintiff became the UFT Delegate for HSAD. <u>See id.</u> At 10:14-22. In the 2009-10 school year, Plaintiff was elected as Chapter Leader of the UFT at HSAD.  <u>See id.</u> at 10-11:24-1.

A school's Chapter Leader is the chief union official of the chapter. Chapter Leaders represent members in disciplinary meetings, negotiate with the principal on contractual issues, deal directly with the district representative and other union officials, provide necessary mediation between members, attend School Leadership Team ("SLT") meetings, safety school meetings, and other meetings with the school's administration. <u>See id.</u> at 12-13:14-7.

The SLT is comprised of the principal, Parent-Teacher Association ("PTA") president, parent members, and teacher members. <u>See id.</u> at 13:15-18. Topics at SLT meetings center around the comprehensive education plan of the school, as well as the budget. <u>See</u> Exhibit 7, Ureña Deposition, at 126:17-24. As the HSAD Chapter Leader, Plaintiff was vocal at SLT meetings at the school. <u>See id.</u> at 127:306. Beginning in February of 2016, at SLT meetings and Consultation Committee meetings, Plaintiff was outspoken about the role of union members in the governance of the school as well as in the creation of academic policy; budgetary concerns; Defendant Ureña's continuous disregard for the teachers' contract; and the right of parents, teachers, and other members of the public, to speak at public meetings. <u>See</u> Exhibit 2, Agosto Declaration, at ¶¶ 20-21.  Defendant Ureña felt that Plaintiff would bring up union issues at SLT meetings that were not within the purview of what was to be discussed at SLT meetings. <u>See</u> Exhibit 7, at 127-28:17-3.

When representing a union member during a disciplinary meeting with school administration, as Chapter Leader, Plaintiff's role is to represent the union member, protect and advocate for the member's rights, ensure that the collective bargaining agreement ("CBA") is being enforced and followed, and allow the member to review and respond to the charges or

allegations. See Exhibit 3, at 14:11-14. After Defendant Ureña assumed leadership of HSAD, he routinely attempted to silence union members and Plaintiff during disciplinary meetings. Defendant Ureña would state during these meetings that they were his meetings and he would actively try to prevent others from speaking. Plaintiff routinely spoke out against Principal Ureña during these meetings and vocally advocated for the rights of the union members he was representing.  See Exhibit 2, at ¶ 16. From 2016 until 2018, Plaintiff represented numerous teachers during disciplinary meetings and other matters, such as grievances, including, but not limited to: Todd Young, beginning in October of 2016 until 2018; Peter Cohn, beginning in October of 2016; Karen Eubanks, on June 27, 2017 and October 2, 2017; Maya Zabar, in the Fall of 2016; Jaclyn Roberts, in May of 2016; Barbara Komansky, in the Spring of 2016; and Bill McCarthy, in the Spring of 2016. See id., at ¶¶ 17-18.

Plaintiff has publicly spoken out about Defendant Ureña's improper actions towards other union members in chapter meetings and with the union. See Exhibit 3, at 38:1-3, 14. As Chapter Leader, Plaintiff began vocalizing teachers' concerns about Principal Ureña's unilateral imposition of new policies and disregard of teachers' voices and perspectives on matters of school policy as early as March and April 2016.  Plaintiff vocalized these concerns both in Consultation Committee meetings where Principal Ureña would be present, as well as in 1:1 in meetings with Principal Ureña. See Exhibit 2, at ¶ 19.

Plaintiff has also spoken out about how Defendant Ureña has taken over control of the Consultation Committee meetings. The purpose of these meetings is for the principal and chapter members to discuss teachers' input on school policies as well as concerns of the individual school's departments. See Exhibit 3, at 39-40:21-3; 41:22-24. However, after Defendant Ureña assumed leadership as principal of HSAD, he denied teachers the opportunity to speak at Consultation

Committee meetings and claimed that he did not have to address the chapter's concerns. Additionally, Defendant Ureña was openly dismissive and hostile towards Plaintiff during these Consultation Committee meetings. See Declaration of Lorraine Liriano, Exhibit 5, at ¶ 13. These actions led to the chapter's decision to no longer engage with Defendant Ureña during Consultation Committee meetings. See Exhibit 3, at 38:16-21; 39:14-20; 40:20-25; 42:17-24.

In addition to speaking out about Defendants' improper actions towards union members and representing teachers in disciplinary conferences, Plaintiff has filed numerous grievances on behalf of the union against Defendants and in particular against the Ureña administration. These grievances were not in furtherance of Plaintiff's core duties as a teacher or pursuant to his job duties, but as a private citizen on matters of public concern as a union leader.

Plaintiff's first grievance against the Ureña administration involved Defendant Ureña's improper modification of the Circular 6 ("C-6") menu, which provides options for the professional period assigned to teachers under the CBA as one of eight periods in the teacher's day. See Exhibit 7, at 148-149:22-9; Exhibit 3, at 22:12-14; Exhibit 2, at ¶ 16. The principal can propose, and the chapter can review, any proposed modification of the C-6 menu. The chapter leader can veto any proposal if he feels it is a threat to the chapter's interest. See Exhibit 3, at 23:17-21.

In late April or early May 2016, Plaintiff met with Defendant Ureña regarding the SBO, prior to filing any grievance. See Exhibit 3, at 46; 12-14; Exhibit 2, at ¶ 16, 18. However, Plaintiff and Defendant Ureña did not reach an agreement regarding the SBO at the meeting or after it. See Exhibit 3, at 47; 11-13. Before Plaintiff could present Defendant Ureña's proposed SBO to the chapter, Defendant Ureña unilaterally modified the C-6 menu without an SBO vote. See Exhibit 3, at 47; 16-18; Exhibit 2, at ¶17.

On May 13, 2016, Plaintiff filed a grievance alleging that "(t)he C-6 menu was not developed in consultation with the Chapter" and sought "(t)he contractual fulfillment of the C-6 Menu." See Plaintiff Grievances, Exhibit E, at DEF0582. Plaintiff contended in his May 13, 2016 grievance that a School Based Option ("SBO") Vote was required before the C-6 Menu chosen by Principal Ureña could be implemented. See Exhibit 7, at 149:22-25; see also Exhibit 3, at 67:14-24.

On May 27, 2016, Plaintiff filed a grievance requesting documents from the administration for the 2011-2014 school years including "galaxy budgets; per session postings for all titles, including teachers, administrators and school aides; reports of audits conducted by city and state agencies; all information related to compensatory time positions, including postings and names of individuals who were positions." See Exhibit E, at P0269-0270. Plaintiff stated he filed this grievance "(b)ecause there was a problem in the school, and the chapter wanted to know where that money went, what happened with those budgets."  See Exhibit 3, at 49:5-7.

Plaintiff also spearheaded a day of protest and union solidarity against Defendants' treatment of union members at HSAD that occurred on May 25, 2016. See Exhibit 3, at 66:11-15. This protest was in response to the denial of an SBO vote and the school administration's directives requiring teachers to move classrooms. See id., at 68:11-17.

On June 8, 2017, Plaintiff filed an Amended Complaint with New York State Public Employment Relations Board ("PERB") on behalf of himself and the union. See PERB Complaints, Exhibit J, at DEF0605. This Complaint alleged "Principal Manuel Ureña directed Assistant Principal of Guidance Joan Weaver to request a probationary teacher to attend UFT chapter meetings with the goal of gathering information about teachers who are active participants

in union activity." See id. at DEF0607. The PERB Complaint further alleged "Ms. Weaver told the probationary teacher that Mr. Ureña was working on terminating our chapter leader and was interested in knowing who the replacement would be." See id. at DEF0608. Plaintiff had previously filed a complaint to Chancellor Carmen Fariña, the Special Commissioner of Investigation, and Michael Mulgrew, the President of the union, alleging that Defendant Ureña conspired with Assistant Principal ("AP") Joan Weaver to eliminate Plaintiff as Chapter Leader. See Exhibit 3, at 71-72:15-22; 74:11-15.

Plaintiff filed his June 8, 2017 PERB complaint based on events that transpired in December 2016. Richard Pellegrini, an untenured teacher at HSAD, knew AP Joan Weaver prior to working at HSAD. See Testimony of Richard Pellegrini, Exhibit 19, at 175-76:19-3. Notably, AP Weaver had previously informed Defendant Ureña of Mr. Pellegrini's connection to her daughter. See Deposition of Joan Weaver, Exhibit 20, at 27:16-22. On the day in question, Mr. Pellegrini received a text message from AP Weaver asking him to come down to her office. When he arrived, a student of his was present. Mr. Pellegrini testified that after the student was dismissed, AP Weaver stated that she was asked by Defendant Ureña if Mr. Pellegrini would be willing to go to the next union meeting and report back as to who was present and who was outspoken. Mr. Pellegrini testified that AP Weaver also stated that the administration was looking to move on from the chapter leader at the school, who at the time was Plaintiff. Mr. Pellegrini further testified that after AP Weaver made this request, his response was that he wasn't very comfortable with the request and that the day of the union meeting conflicted with his uncle's wake, which he would be attending. Mr. Pellegrini testified that after he informed AP Weaver he could not attend the union meeting, she seemed relieved and said that she would let Defendant Ureña know that Mr. Pellegrini

could not attend the union meeting because of a family matter. See Exhibit 19, at 179-81:10-22; 182:5-25; 183:4-7.

Plaintiff filed a second PERB charge on June 8, 2017 on behalf of the HSAD union members alleging that the union was improperly denied the opportunity to hold an SBO vote regarding the aforementioned C-6 modifications. See Exhibit J, at DEF06012-13.

Plaintiff filed a third PERB charge on July 21, 2017 alleging retaliation for his activities as Chapter Leader.  See id. at DEF0615-17.

At the end of the 2017-18 school year, Defendant Ureña once again sought to modify the C-6 menu without an SBO for the upcoming 2018-19 school year. See Exhibit 2, at ¶ 43. In response, in April of 2018, Plaintiff filed yet another grievance alleging an improper modification of the C-6 menu. See id. Plaintiff's April 2018 SBO grievance proceeded to Step 2, where it was once again denied. See Exhibit 7, at 128:6-12.  However, after the grievance was taken to arbitration, it was sustained on June 6, 2019. See Exhibit 2, at ¶ 35; Expedited Opinion and Award dated June 3, 2019 for UFT Case No. A-071-M66414, Exhibit 21.

Defendants claim that Plaintiff's speech was neither as a citizen nor on a matter of public concern. Plaintiff's first acts of protected speech relevant in this matter occurred in February, March and April 2016, when, as Chapter Leader and the voice of the HSAD union chapter, Plaintiff began vocalizing teachers' concerns about Principal Ureña's unilateral imposition of new policy and disregard of teachers' voices and perspectives on matters of school policy. Plaintiff vocalized these concerns both in Consultation Committee and SLT meetings where Principal Ureña would be present, as well as in 1:1 in meetings with Principal Ureña. See Exhibit 2, at  ¶¶ 19-21

Plaintiff's next act of protected speech occurred on May 13, 2016 when he filed a grievance related to Defendant Ureña's unilateral modification of the C-6 menu without holding

an SBO vote. <u>See</u> Exhibit E, at DEF0582. Plaintiff engaged in further protected speech when he vocalized and complained of these same concerns in a June 8, 2017 PERB Charge, as well as similar concerns in an April 2017 grievance, both of which Plaintiff filed on behalf of all union members of HSAD. <u>See</u> Exhibit J, at DEF06012-13;  Exhibit 7, at 128:6-12; Exhibit 2, at ¶ 35; Exhibit 21. Plaintiff's May 27, 2016 grievance additionally qualifies as protected speech. <u>See</u> Exhibit E, at P0269-0270; Exhibit 3, at 49:5-7.

Finally, as Chapter Leader, from 2016 until 2018, Plaintiff continuously engaged in protected speech as the union advocate and representative of teachers and union members. <u>See</u> <u>id.</u>, at ¶¶ 16-18.

Matters of public concern are those that relate to "any matter of political, social, or other concerns to the community." <u>See</u> <u>Pekowsky</u>, 23 F. Supp. at 276-77 (citing <u>Singer v. Ferro</u>, 711 F.3d at 334, 339). Contrary to Defendants' position, Plaintiff's grievances and complaint regarding the improper modification of the C-6 menu had nothing to do with hours worked by employees. Rather, it related to the interpretation and disregard of the CBA, which plainly is a matter of political and social concern to the community. Further, Plaintiff did not seek to benefit personally from this grievance; rather, he sought to enforce the terms of the CBA and ensure that Defendants could not unilaterally disregard its terms, which would set a dangerous precedent not just for union members at HSAD, but for the entire UFT. Indeed, this is underscored by the fact that the UFT took Plaintiff's grievance to the last step of arbitration, and an arbitrator ruled in favor of Plaintiff and the UFT, finding that Defendants had violated the CBA. <u>See</u> Exhibit 21.

Union advocacy representation on behalf of other members qualifies as conduct as a private citizen and may be protected under the First Amendment. <u>See</u> <u>Payson</u>, 2017 U.S. Dist. LEXIS 154296, at *57.  An employee's association with a union, as well as any speech that arises

from his or her position in a union, is constitutionally protected under the First Amendment. See, e.g., Heffernan v. Straub, 612 F. Supp. 2d at 313, 328; Donovan, 547 F.Supp. at 218; Bowen-Hooks v. City of N.Y., 13 F. Supp. 3d at 179, 239;  Frisenda v. Inc. Vill. of Malverne, 775 F. Supp. 2d at 486, 509–10.  See also Pekowsky, 23 F.Supp. at 278 ("Pekowsky's advocacy on behalf of fellow teachers was not aimed at redressing his own grievances, but was undertaken as a representative of the teachers' union"). Plaintiff, as Chapter Leader of HSAD, is the school's union leader and the only individual at HSAD capable of filing grievances on behalf of all members of the chapter. His May 13, 2016 SBO grievance and May 27, 2016 budget grievance arose from his position and association with the union and from his responsibilities to the chapter and clearly surpassed his duties as a teacher. His advocacy, as in Pekowsky, was not aimed at redressing his own grievances, but was undertaken as a representative of the teachers' union. The similarities between Pekowsky and this matter are striking. In Pekowsky, the plaintiff spoke out and opposed a proposal regarding teacher supervision of extracurricular activities, which, although affected Pekowsky, was at its core advocacy on behalf of the union members and not a personal grievance. Similarly, Plaintiff's grievances regarding the improper medication of the C-6 menu and his vocal opposition to other dogmatic policies by Defendant Ureña, while concerning Plaintiff, because he, like all other union members at HSAD, were affected by the policies, at their core, constituted advocacy on behalf of the union members and were not personal grievances.

Similarly, Plaintiff's organization of a day of protest and his first June 8, 2017 PERB charge, all stem from Plaintiff's role as a union Chapter Leader. Each relates to grievances and issues advocated on behalf of all union members at HSAD, rather than Plaintiff personally.

Plaintiff's grievance relating to budgetary concerns concerned the budget as a whole and had nothing to do with his personal compensation. Cf. Payson, 2017 U.S. Dist. LEXIS 154296

at *58. The grievance was neither personal in nature nor related to Plaintiff's own situation. Further, the allocation of a school's budget, which is based on public funds, plainly is "of value and concern to the public." City of San Diego v. Roe, 543 U.S. 77, 82-83 (2004).

Plaintiff's first June 8, 2017 PERB charge as well related to issues concerning the union as a whole. The PERB charge alleged that Defendant Ureña sought to gather information about "teachers who are active participants in union activity." See See Exhibit J of Defendant's 56.1, at 5. Although the Complaint also concerned Defendants' actions towards Plaintiff, it centered on allegations of spying and interference with union activities. AP Weaver herself even acknowledged that the allegations, if true, constitute interference with union activity. See Deposition of Joan Weaver, Exhibit 20, at 21:7-12. Preventing and challenging such interference through a PERB charge fundamentally is public in nature and is constitutionally protected under the First Amendment, as it "invokes basic aspects of the right to unionization." Lynch v. Ackley, 811 F.3d 569, 581 (2d Cir. 2016).

Finally, Plaintiff's consistent and frequent representation of union members during disciplinary conferences and other matters is plainly within the gamut of protected speech envisioned by Payson and other cases. See, e.g., Payson, 2017 U.S. Dist. LEXIS 154296 at *58; Bennett, No. 1:07-cv-308 (GLS/RFT), 2010 U.S. Dist. LEXIS 130308, at *7.

### B.  Actionable Adverse Actions Were Taken Against Plaintiff

 The "adverse employment action" inquiry in the section 1983 context focuses on whether …the defendants' acts would have a chilling effect on the employee's exercise of First Amendment rights. Barton v. Clancy,  632 F.3d 9, 29 (1st Cir. 2011), (1st Cir. 19189) (en banc); see also Rivera Jimenez v. Pierluisi, 362 F.3d 87, 94 (1st Cir. 2004) ("[T]he standard for showing an adverse employment action is lower in the First Amendment retaliation context than it is in

other contexts …"). A campaign of informal harassment, for example, would support a First Amendment retaliation claim if the alleged harassment would have such a chilling effect. See Barton, supra. A "substantial campaign of harassment, instigated or knowingly tolerated by superiors," can form the basis for a § 1983 claim. See Rosario-Urdaz v. Velazco, 433 F.3d 174, 179 (1st Cir. 2006).  Even "relatively minor events" can give rise to § 1983 liability, so long as the harassment is not so trivial that it would not deter an ordinary employee in the exercise of his or her First Amendment rights. Rivera-Jiménez, 362 F.3d at 94 (retaliatory harassment of plaintiff, including denial of special benefits and assignments, was sufficiently adverse to form basis for First Amendment claim); see also, e.g., Coszalter v. City of Salem, 320 F.3d 968, 976-77 (9th Cir. 2003) (campaign of retaliatory acts, including disciplinary investigation, change in duties, and verbal harassment and humiliation, was sufficient to support First Amendment claim); Pieczynski v. Duffy, 875 F.2d 1331, 1335-36 (7th Cir. 1989) (campaign of minor harassments, including removing plaintiff's long distance phone line, denying requests for vacation time, confining duties to paperwork, and not allowing her to change lunch hour, was sufficient to support First Amendment claim); Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982) ("campaign of petty harassments," including groundless reprimands of plaintiff and holding her up to ridicule for bringing a birthday cake to the office, supported First Amendment claim).  Certainly, unwarranted disciplinary letters to file, less-than-effective performance evaluations, false allegations of misconduct, and Education Law Section 3020-a charges, as well as sexual harassment and aggression, abusive language, name-calling, gestures, and behavior of a tormenting nature, rises to the level of a campaign of harassment that would dissuade a similarly-situated individual of ordinary firmness from exercising his constitutional rights.

### C. There Is A Causal Nexus Between Plaintiff's Protected Activity And Adverse Treatment

Defendants argue that because Plaintiff filed a similar grievance to his May 13, 2016 C-6 grievance in 2015 and experienced no retaliation after his 2015 grievance, there is no causal connection based on temporal proximity. This argument fails, however, because the HSAD Principals during the 2014-15 and 2015-16 school years differed and because Defendants' first act of retaliation occurred less than two months after Plaintiff's first protected speech. In 2015, when Plaintiff filed his first SBO grievance, Frances DeSanctis was the acting principal at HSAD. However, in May 2016, when Plaintiff filed a different C-6 grievance, Defendant Ureña had assumed the principalship of HSAD. Two weeks after Plaintiff filed the May 13, 2016 grievance, Plaintiff received a disciplinary letter to file for alleged insubordination on May 27, 2016. See Exhibit D, at DEF0276. Plaintiff's filing of the May 13, 2016 was a continuation of his advocacy of HSAD union members and challenge to Defendant Ureña's dogmatic behavior. Indeed, Plaintiff, as early as March and April 2016, was vocally opposed to Defendant Ureña's disregard of teachers' voices and perspectives on matters of school policy and unilateral imposition of new policy in the school. Thus, when Plaintiff received the 48-Hour notice preceding his May 27, 2016 letter to file, this was directly in retaliation for Plaintiff's advocacy on behalf of union members that began in March and April 2016.

Plaintiff has proffered substantial other evidence supporting a finding of retaliatory animus. From the very beginning, Defendant Ureña's colleagues fed him information that fueled his animosity and vehemence towards the UFT and Plaintiff, as the HSAD Chapter Leader. For example, Superintendent Marisol Rosales ("Supt. Rosales") spoke to Defendant Ureña when he became principal and told him that she had a difficult time with the union and chapter leader. See Exhibit 7, at 76-77:21-2. Additionally, when Defendant Ureña came to HSAD as principal, he had

a conversation with former HSAD principal Eric Strauss, who told him there was a challenging environment regarding union activity at the school and that the chapter leader, Mr. Agosto, was combative. See Exhibit 7, at 65-66:5-22.

Thereafter, Defendants exhibited their union-based animus towards Plaintiff on numerous occasions. Superintendent Marisol Rosales visited HSAD on May 25, 2016, the day after Plaintiff and other union officials met with Defendant Ureña regarding his disregard for the teachers' contract and union matters, and days after a day of protest and union solidarity by teachers at HSAD. Three of the five individuals observed that day were members of the union leadership at HSAD, including Plaintiff, and received extremely negative criticism regarding their lessons. See Exhibit 3, at 61:18-20; 62:2-19; 64:8-14; 66:9-20; 67:12-16; Exhibit 2, at ¶ 25; Exhibit 5, at ¶ 7. The timing of Supt. Rosales' visit, as well as the particular teachers whom she visited who were active and vocal in the union, supports an inference that her visit occurred in retaliation for teachers' union activity.

Following these observations by Superintendent Rosales, Principal Ureña informed Plaintiff that he would be coming back to perform an additional observation in the upcoming weeks. See Exhibit 3, at 64:8-14; Exhibit 2, at ¶ 25. In response to Defendant Ureña's criticism of his lesson and statement that he would be returning to his class in the near future to conduct an observation, Plaintiff requested that he or one of his assistant principals model a lesson for him. Not only did Principal Ureña purposely ignore his request, he mocked Plaintiff in emails with Superintendent Rosales. See Exhibit 2, at ¶ 26; May 30, 2016 email chain between Supt. Rosales and Defendant Ureña , Exhibit 24, at DEF2121-22.

On May 31, 2016, Principal Ureña informally observed Plaintiff. See observations of Plaintiff's Classroom, Exhibit C at DEF0280. The ratings that Defendant Ureña issued to Plaintiff

in the May 31, 2016 observation report are inaccurate and not representative of Plaintiff's actual pedagogy or performance during this lesson. See Deposition of Jason Agosto, Exhibit 2, at 175: 21-23; 177-78:17-16; 179-80:20-5; Declaration of Jason Agosto, at ¶ 22; Rebuttal to May 31, 2016 observation report, P133-34.

Furthermore, Plaintiff thereafter continued to receive substantially lower ratings than he had in his entire career, in furtherance of Defendants' retaliatory agenda. See Exhibit 2, at ¶ 32. Indeed, prior to Defendant Ureña's administration, Plaintiff had never received individual or overall ratings or observations that were less-than-effective or unsatisfactory. See Exhibit 3, at 31:7-12. Plaintiff's pedagogy has not declined since Defendant Ureña became Principal and Plaintiff has always taught in a satisfactory manner. See Testimony of Andrew Savage, Exhibit 4, at 251:10-21; 255:4-23; 256-60:3-24; Exhibit 2, at ¶ 32.

Additionally, teachers who have received the lowest ratings by Defendant Ureña and his administration are those who have been the most active in the union. See Exhibit 3 at 58:15-19. Though Defendants contend that members of the Consultation Committee received effective ratings in the 2015-16, 2016-17, and 2017-18 school years, this is unsupported by the record and a disputed issue of fact. See Exhibit 3, at 58:15-19.

Due to Defendant Ureña's fabricated, inaccurate May 31, 2016 observation report, Plaintiff received a "Developing" rating for his 2015-16 Measures of Teacher Performance ("MOTP"). See MOTP Rating, Exhibit T at 1. As a direct result of this, Defendant Ureña placed Plaintiff on a Teacher Improvement Plan ("TIP") for the 2016-17 school year. See Exhibit F at 206:11-18. During Plaintiff's TIP meetings that occurred during the 2016-17 school year, Defendant Ureña would make derogatory and hostile comments toward Plaintiff, and physically intimidated him on multiple occasions. See Exhibit 3, at 77-84:20-22; 88:3-14; Exhibit 5, at ¶ 12.

Defendant Ureña and his administration, beginning in the Spring of 2016 and continuing until present, have issued Plaintiff numerous letters to file containing false allegations of misconduct in further retaliation, culminating in June 2019 Education Law Section 3020-a charges now seeking to terminate his employment. <u>See</u> Exhibit 2, at ¶ 23; 3020-a Charges and Specifications, Exhibit 26.

Defendant Ureña's conduct towards Plaintiff and other union members during Consultation Committee meetings further demonstrates his animus towards the teachers' union and Plaintiff as the HSAD Chapter Leader. Defendant Ureña began bringing his assistant principals to Consultation Committee meetings during the 2017-18 school year. <u>See</u> September 4, 2017 email from Manuel Ureña, Exhibit 15, at P185. Assistant principals had not previously participated in Consultation Committee meetings. <u>See</u> Deposition of Elma Reingold, Exhibit 10, at 38-39:21-3. Defendant Ureña's conduct in having his Assistant Principals attend Consultation Committee meetings violates the language of Article 19, Section H, subsection 3 of the CBA, which states that only the head of school is to be at these meetings. Such blatant disregard for the CBA demonstrates Defendant Ureña's animus towards the UFT and, by extension, Plaintiff as the HSAD Chapter Leader. <u>See</u> October 3, 2007 - October 13, 2009 CBA Article 19, Section H, Subsection 3, Exhibit 16, at DEF1682.

Defendant Ureña's conduct during Consultation Committee meetings also differs from prior principals because he is more combative and disrespectful towards union members. <u>See</u> PERB Testimony of Barbara Komansky, Exhibit 17, at 18-19:16-8. Additionally, Defendant Ureña was openly dismissive and hostile towards Plaintiff during these Consultation Committee meetings. <u>See</u> Exhibit 5, at ¶ 13.

During a May 10, 2017 Consultation Committee meeting, Defendant Ureña displayed his true feelings of union animus when he informed the chapter that if they took an SBO vote on his C-6 proposal for the upcoming 2017-18 school year, he would not honor it. See Exhibit 6, at 234-35:20-14. Defendant Ureña further threatened to put every teacher in a department meeting, every day, if Plaintiff attempted to pursue a grievance. See Exhibit 2, at ¶ 42.

Perhaps most telling of Defendant Ureña's animus towards Plaintiff as Chapter Leader stems from the disturbing behavior of he and his Assistant Principal, Joan Weaver, towards Richard Pellegrini. Mr. Pellegrini, an untenured teacher at HSAD, knew AP Weaver prior to working at HSAD. See Testimony of Richard Pellegrini, Exhibit 19, at 175-76:19-3. Defendant Ureña knew of Mr. Pellegrini's connection to AP Weaver's daughter and thus to AP Weaver. See Deposition of Joan Weaver, Exhibit 20, at 27:16-22.

In December 2016, Mr. Pellegrini received a text message from AP Weaver asking him to come down to her office. When he arrived, a student of his was present. Mr. Pellegrini testified that after the student was dismissed, AP Weaver stated that she was asked by Defendant Ureña if Mr. Pellegrini would be willing to go to the next union meeting and report back as to who was present and who was outspoken. Mr. Pellegrini testified that AP Weaver also stated that the administration was looking to "move on" from the chapter leader at the school, who at the time was Plaintiff. Mr. Pellegrini further testified that after AP Weaver made this request, his response was that he wasn't very comfortable with the request and that regardless the day of the union meeting conflicted with his uncle's wake, which he would be attending. Mr. Pellegrini testified that after he informed AP Weaver he could not attend the union meeting, she seemed relieved and said that she would let Defendant Ureña know that Mr. Pellegrini could not attend the union meeting because of a family matter. See Exhibit 19, at 179-81:10-22; 182:5-25;

As the less-than-effective observation reports and letters to file were unjustified, there is more than enough evidence from which a jury could conclude that the creation of these observation reports and letters to file was pretextual and the real reason was retaliatory in nature. The observation reports would not have been issued had Plaintiff not engaged in his protected speech. Defendants contend that because Defendant Ureña and AP Lynn Rosales both issued Plaintiff less-than-effective observation reports, this establishes that Plaintiff's ratings would have been an issue regardless of his protected speech. Such argument is meritless. As noted, Plaintiff contests the validity of these observation reports. Additionally, AP Rosales referred to Plaintiff as an "idiot" in text messages with Defendant Ureña, lending serious doubts to validity and fairness of her observations of Plaintiff. See Lynn Rosales Text Messages, Exhibit 25, at DEF1897-98. Thus, whether the observation reports are accurate and reflect what actually took place in Plaintiff's classroom on the days and question is a contested issue of fact and the timing of these observation reports followed Plaintiff's vocal union activities.

Similarly, the disciplinary letters to file would not have been issued had Plaintiff not engaged in his protected speech. Regarding the May 2016 letter to file, Plaintiff complied with Defendant Ureña's directive to provide the student work. See Exhibit 2, at ¶ 34. Regarding the June 14, 2016 letter to file, the marking period was not over and Plaintiff was denied the opportunity to finalize and input his grades before the end of the marking period. See Exhibit 2, at ¶ 35. Plaintiff received his June 27, 2017 letter to file because Defendant Ureña conducted a deficient and biased investigation by failing to take statements from teachers who were in the room and witnessed the event and disregarded Plaintiff's recount of what transpired. See Exhibit 3, at 123-24:5-21; 125:5-13; 126:20-25; 128:15-16. Finally, the allegations contained in Plaintiff's October 23, 2017 letter to file, as with his previous letters, are false; Plaintiff was not insubordinate,

and did teach during the September 18th 6th period class and observation. See Exhibit 3, at 172: 8-13; 172:23-25.

Thus, whether the proffered reasons for these observation reports and letters to file are the "real reason" for the adverse employment action therefore is a question of fact which cannot be resolved on this motion. See Granica v. Town of Hamburg, 2017 WL 664040 (W.D.N.Y. 2017).

### D.  Plaintiff Has Demonstrated A Municipal Policy Or Practice

A municipality, or municipal agency such as Defendant NYCDOE, may be held liable under Section 1983 only if a plaintiff's injury is the result of municipal policy, custom, or practice. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Patterson v. County of Oneida, 375 F.3d at 206 (2d Circ. 2004). To maintain a claim, a plaintiff must allege "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995)  (internal quotation marks omitted). The plaintiff "need not identify an express rule or regulation, but can show that a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law, or that a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials." Littlejohn v. City of N.Y., 795 F.3d 297, 315 (2d Cir. 2015).

"[T]he single act of a municipal policymaker, i.e., a person with the authority to set municipal policy, can constitute official policy, and thus, can give rise to municipal liability." Santos v. New York City, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) . However, a municipal agency can only be held liable for the conduct of an official where that official "ha[d] final authority over significant matters involving the exercise of discretion . . . . An official has

final authority if [her] decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions." Rookard v. Health & Hosps. Corp., 710 F.2d 41, 45 (2d Cir. 1983) .

Courts in the Second Circuit have held that a superintendent may be a final policymaker. See Hurdle v. Bd. of Educ. for City of New York, 2003 U.S. Dist. LEXIS 15521, (S.D.N.Y. Sept. 8, 2003) (New York school district superintendent was policy maker whose decision to transfer a school principal could impose liability on Board of Education under Section 1983); Payne v. Huntington Union Free Sch. Dist., 219 F. Supp. 2d 273, 276 (E.D.N.Y. 2002). Additionally, "a public school principal may be a final policymaker where the 'harm that befell the plaintiff was under the principal's control.'" Eldridge v. Rochester City Sch. Dist., 9968 F. Supp. 2d 546, 562 (W.D.N.Y. 2013) (quoting Zambrano-Lamhaouhi v. N.Y.C. Bd. of Educ., 866 F. Supp. 2d 147, 175 (E.D.N.Y. 2011)); Marino v. Chester Union Free Sch. Dist., 859 F. Supp. 2d 566, 569 (S.D.N.Y. 2012) ("However, while broad rulemaking authority is vested in the school board by law, policymaking authority may not be so strictly limited. As a practical matter, principals are the highest ranking officials in the school and thus have policymaking authority in the day-to-day operations of the school."); T.Z. v. City of New York, 635 F. Supp. 2d 152, 179 n.27 (E.D.N.Y. 2009), rev'd in part on other grounds, 634 F. Supp. 2d 263 (E.D.N.Y. 2009) ("A school principal has final policymaking authority in the management of the school and her conduct represents official district policy within the purview of the school."); Lovell v. Comsewogue Sch. Dist., 214 F. Supp. 2d 319, 324 (E.D.N.Y. 2002); Rabideau v. Beekmantown Cent. Sch. Dist., 89 F. Supp. 2d 263, 268 (N.D.N.Y. 2000) (explaining that the New York "legislature did not intend to impose upon the board of education a duty to make and assume direct responsibility of enforcing rules reaching down into each classroom in the school system," that the principal "was the highest

ranking person in the school . . . directly responsible for discipline," and, therefore, the principal's "knowledge of her subordinate's behavior and acquiescence, if not direct participation, in the conduct amounts to a custom or policy attributable to the [d]istrict").

Defendant Ureña, the HSAD principal, at all times relevant to this matter was the highest-ranking official in the school and was a final policymaker. All of the harm that befell Plaintiff was under Defendant Ureña's control, whether it be less-than-effective observation reports, letters to file, or the more heinous acts of sexual harassment and physical intimidation in which Defendant Ureña relished. Additionally, as can be gleaned from the email exchanges between Defendant Ureña and Supt. Rosales, the two conspired to retaliate against Plaintiff and Supt. Rosales was well aware of Defendant Ureña's actions towards Plaintiff. For these reasons, Plaintiff has made out a <u>Monell</u> claim against Defendant NYCDOE.

### E.  Defendant Ureña Is Not Entitled to Qualified Immunity

"Qualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits." <u>Lennon v. Miller</u>, 66 F.3d 416, 420 (2d Cir. 1995). Government actors are entitled to qualified immunity on a § 1983 claim if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). "On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred." <u>Id.</u> "Qualified immunity is an affirmative defense on which the defendant has the burden of proof, either at trial or on a motion for summary judgment." <u>Johnson v. Perry</u>, 859 F.3d 156, 170 (2d Cir. 2017).

Notably, however, it "is not necessary, of course, that 'the very action in question has previously been held unlawful.'" <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1866-67 (2017).   Rather, "the need for 'clearly established' law is satisfied if the law on the subject was defined at the time with reasonable clarity or clearly foreshadowed in rulings of the Supreme Court or the Second Circuit, so that the defendant should have understood that her conduct was unlawful." <u>Montero v. City of Yonkers</u>, 890 F.3d 386, 402 (2018); <u>see also Lynch v. Ackley</u>, 811 F.3d at 569, 578-79.

Thus, although <u>Montero, supra,</u> was decided on May 16, 2018, other cases have stated that union advocacy representation on behalf of other members qualifies as conduct as a private citizen and may be protected under the First Amendment. <u>See, e.g, Payson</u>, 2017 U.S. Dist. LEXIS 154296, at *62-63 (holding that accompanying an employee solely in one's capacity as a union representative "invokes basic aspects of the right to unionization" and is therefore a matter of public concern); <u>Pekowsky</u>, 23 F. Supp. at 277 (plaintiff's advocacy on behalf of the teachers' union and on behalf of other teachers in his capacity as representative of the union, is protected speech); <u>Bennett</u>, 2010 U.S. Dist. LEXIS 130308, at *1-2 (plaintiff represented and advocated for another teacher, whom he believed had been mistreated).

Defendant Ureña retaliated against Plaintiff for engaging in protected speech much like that found in <u>Payson</u>, <u>Pekowsky</u>, and <u>Bennett</u>. <u>See, supra</u>, Points I (B-D). Thus, Defendant Ureña is not entitled to qualified immunity.

POINT II

**SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS FOR HOSTILE WORK ENVIRONMENT AND RETALIATION UNDER TITLE VII AND THE NYSHRL SHOULD BE DENIED**

### A. Sufficient Issues of Fact Exist Such That Summary Judgment Should Be Denied On Plaintiff's Claims of Hostile Work Environment

To survive summary judgment on his hostile work environment claims under Title VII and the NYSHRL, Plaintiff must demonstrate that a rational trier of fact could find that "the complained of conduct (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex [or race]." Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks and punctuation omitted) (citing Gregory v. Daly, 243 F.3d 687, 691-92 (2d Cir. 2001)). The Court must consider the "totality of the circumstances" when evaluating a hostile work environment claim, including "the frequency and severity of the conduct, whether it was physically or verbally threatening, and whether it unreasonably affected the employee's job performance." Burhans v. Lopez, 24 F. Supp. 3d 375, 380 (S.D.N.Y. 2014).

In order to establish a *prima facie* case of sexual harassment based upon a "hostile work environment," a plaintiff must demonstrate: (1) that he is a member of a protected group; (2) that he was the subject of unwelcome advances; (3) that the harassment was based upon his sex; and (4) that the harassment affected a term, condition or privilege of employment. Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1042 (2d Cir. 1993)

The Second Circuit has acknowledged that "a single act can create a hostile work environment if it in fact work[s] a transformation of the plaintiff's workplace." Feingold v. New

York, 366 F.3d at 138, 150; see also Ferris v. Delta Air Lines, Inc., 277 F.3d 128, 136 (2d Cir. 2001) ("Although a continuing pattern of hostile or abusive behavior is ordinarily required to establish a hostile environment, a single instance can suffice when it is sufficiently egregious."); see also, Bermudez v. City of New York, 783 F. Supp. 2d 560, 593-94 (S.D.N.Y. 2011) (finding that a single incident where a defendant allegedly simulated oral sex with co-defendant in front of plaintiff could be found sufficiently severe enough to create a hostile work environment in light of co-defendant's other harassing behavior, and could reasonably result in liability for that defendant); Torres v. N.Y. Methodist Hosp., No. 15 CV 1264 (PKC) (PK), 2016 U.S. Dist. LEXIS 2365, at*28-29 (E.D.N.Y. Jan. 7, 2016) (finding a hostile work environment was created by simulated performance or oral sexy and masturbation).

Defendant Ureña's first act of sexual harassment occurred in March 2016, when he encroached upon Plaintiff in a sexual nature by positioning himself behind Plaintiff while Plaintiff was bent over, in a simulated act of anal penetration. See Exhibit 3, at 97-98:22-7. This act by itself was heinous enough to have created a hostile work environment for Plaintiff.

Beginning during the 2016-17 school year, however, perhaps emboldened by Defendant NYCDOE's total acquiescence to his retaliatory and discriminatory behavior thus far as the principal of HSAD, Defendant Ureña began actively sexually harassing Plaintiff again in January 2017. Though Defendants claim that Defendant Ureña was in the habit of offering individuals who entered his office lollipops, he never offered Plaintiff a lollipop until he used it to simulate fellatio on January 20, 2017. See Exhibit 2, at ¶ 36; Exhibit 3, at 108-10:2-19. Furthermore, Plaintiff contends Defendants' assertion that Defendant Ureña had on other occasions eaten lollipops in meetings with students and teachers. Plaintiff contends this assertion is implausible, as multiple school administrators testified that the HSAD policy prohibits food and eating in the school, and

that it would be inappropriate for an administrator such as Defendant Ureña to eat a lollipop while conducting an observation. See Exhibit 10, at 44:18-19; 46:6-19; 49:14-24; Deposition of Lynn Rosales, Exhibit 11 at 73:3-7; Deposition of Theresa Budney, Exhibit 12, at 104:5-12. Rather, Defendant Ureña purposely utilized the lollipops as a tool for his sexual innuendos and harassment of Plaintiff.

Five days later, on January 25, 2017, Defendant Ureña came into Plaintiff's room and was belligerent and aggressive towards Plaintiff. See Exhibit 3, at 129-30:10-8; Testimony of Bettina Marks, Exhibit 22, at 307-10:17-8; Testimony of George Zicopolous, Exhibit 23, at 326-28:15-22.

Defendant Ureña's sexual harassment of Plaintiff continued on an almost daily basis. He would stare at Plaintiff; sneer at him and make other facial gestures; cat-call and clap at him; sing to him; and make derogatory and demeaning comments towards and about him. See Exhibit 2, at ¶ 40. He would physically intimidate Plaintiff during TIP meetings in which Ms. Liriano was present, when he would flail his hands at Plaintiff's face and move his body and face in very close proximity to Plaintiff. See Exhibit 3, at 100:14-22; Exhibit 5, at ¶ 12. During meetings in which Mr. Liriano was not present, Defendant Ureña would continue to physically intimidate Plaintiff. See Exhibit 3, at 101:5-13. On May 1, 2017, Principal Ureña sung the song "Tomorrow" from the musical "Annie" while Plaintiff was assisting Todd Young in a review his personnel file; in particular, Principal Ureña repeatedly sang the lyrics, "I'll love you, tomorrow" while staring at Plaintiff. See Exhibit 2, at ¶ 38.   Such constant and pervasive behavior continued for the remainder of the school year.

During the 2017-18 school year, in addition to the almost daily harassment of Plaintiff, Defendant Ureña referred to Plaintiff in the femine form during a post-observation conference on October 13, 2017. See Exhibit 3, at 142:7-22. In late October of 2017, Principal Ureña followed

Plaintiff down a hallway on the sixth floor while shouting "it's a beautiful day." <u>See</u> <u>id.</u>, at ¶ 39. Additionally, on November 14, 2017, Defendant Ureña took an unsolicited picture of Plaintiff's backside. Notably, Defendant Ureña had never before taken a picture of Plaintiff during an observation. <u>See</u> Exhibit 3, at 116:7-13; 118:5-14.

Given that the Second Circuit has held that similar conduct such as that alleged by Plaintiff rises to the level sufficient to create a hostile work environment, and recognizing that there is insufficient basis to dismiss Plaintiff's hostile work environment claim, granting Defendants' motion would be contrary to the Second Circuit's caution to courts not to set the bar too high in performing this analysis. <u>See</u> <u>Perry v. Slensby</u>, No. 16-CV-08947 (NSR), 2018 U.S. Dist. LEXIS 33602, at *21 (S.D.N.Y. Feb. 28, 2018) (quoting <u>Tepperwien v. Entergy Nuclear Operations, Inc.</u>, 663 F.3d 556 [2d Cir. 2011]).

Defendants' argument that Defendant Ureña's alleged acts towards Plaintiff did not occur under circumstances giving rise to sex or gender discrimination are equally without merit. Plaintiff has alleged that Defendant Ureña simulated fellatio with a lollipop, simulated anal penetration, took a picture of his buttocks, stared and leered at him on multiple occasions, cat-called him on multiple occasions, encroached upon his personal space, and engaged in other forms of physical harassment. A spade is a spade regardless of what it is called. The acts alleged by Plaintiff are clearly sexual in nature and occurred under circumstances giving rise to sex discrimination.

**B. Sufficient Issues of Fact Exist Such That Summary Judgment Should Be Denied On Plaintiff's Claims of Retaliation**

For a plaintiff to state a claim for retaliation, a plaintiff must prove that (1) he engaged in a protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." <u>See</u> <u>Fincher v. Depository Trust & Clearing Corp.</u>, 604 F.3d 712, 720 (2d

Cir. 2010).  To qualify as an adverse employment action for a retaliation claim, the act must be one "that could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Railway v. White, 543 U.S. 53 (2006).

Plaintiff's first protected activity, in the context of Title VII and NYSHRL, occurred when he accused Defendant Ureña of sexual harassment on February 3, 2017. See, e.g, Ragin v. E. Ramapo Cent. Sch. Dist., 2010 U.S. Dist. LEXIS 32576, at *47-48 (S.D.N.Y. Mar. 31, 2010) (holding that verbal complaints constitute protected activities). Plaintiff's next protected activity occurred when he filed his EEOC Charge in March 2017.

The Second Circuit has found that "negative evaluation letters, express accusations of lying, assignment of lunchroom duty, reduction of class preparation periods, failure to process teacher's insurance forms, transfer from library to classroom teaching as an alleged demotion, and assignment to [a] classroom on [the] fifth floor which aggravated teacher's physical disabilities" may qualify as adverse employment actions for purposes of a retaliation claim.  Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 226 (2d Cir. 2006). Disciplinary letters issued by the New York City Department of Education have been found to constitute adverse employment actions. See, e.g., Thompson v. City of N.Y., 2002 U.S. Dist. LEXIS 23675, at *17 (S.D.N.Y. Dec. 6, 2002); Fahmy v. Duane Reade, Inc., No. 04-CV-1798, 2006 U.S. Dist. LEXIS 37703, 2006 WL 1582084, at *10 (S.D.N.Y. June 9, 2006). Courts have also found that negative performance evaluations, absent negative consequences to the employee, are sufficient to support a retaliation claim. See Siddiqi v. N.Y.C. Health & Hospitals Corp., 572 F. Supp. 2d 353, 372 (S.D.N.Y. 2008) ("Unlike in discrimination claims, [for the purposes of a retaliation claim] negative performance reviews, standing alone, can be considered an adverse employment action." (citation omitted)); Taylor v. N.Y.C. Dep't of Educ., No. 11-CV-3582, 2012 U.S. Dist. LEXIS 170917, 2012 WL 5989874, at

*10 (E.D.N.Y. Nov. 30, 2012) ("[N]egative performance reviews, standing alone, can be considered an adverse employment action for purposes of a retaliation claim." (citation and internal quotation marks omitted)). Regardless, Defendants have filed Education Law Section 3020-a disciplinary charges seeking termination on the basis of his purported negative evaluations and disciplinary letters to file. See Exhibit 26. Thus, even if this Court finds that negative consequences to the employee are requisite in order for negative performance evaluations to be considered adverse employment actions, such consequences have occurred.

Defendants argue that because Plaintiff had been receiving both letters to file and less-than-effective performance evaluations since May 2016, prior to his protected activities, this destroys any causal connection that may exist. This argument fails, however, because it disregards the interlinked causality between Plaintiff's protected activities in a Title VII and NYSHRL context and in the First Amendment context. All of Defendants adverse employment acts, as alleged by Plaintiff, were retaliatory, whether in response to Plaintiff's protected speech or his protected activities. Whether the retaliatory acts occurred but-for Plaintiff's protected speech or his protected activities is an issue of fact to be determined by a jury.

## POINT III

### SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS FOR HOSTILE WORK ENVIRONMENT AND RETALIATION UNDER THE NYCHRL SHOULD BE DENIED

### A. Sufficient Issues of Fact Exist Such That Summary Judgment Should Be Denied On Plaintiff's Claims of Hostile Work Environment

In order to prove a prima facie case under the NYCHRL, a plaintiff need not demonstrate that he was subjected to "severe and pervasive" sexual harassment; only that he "has been

treated less well than other employees because of h[is] gender." Caravantes v. 53rd St. Partners, LLC, 2012 U.S. Dist. LEXIS 120182, at *43-44 (S.D.N.Y. Aug. 23, 2012) (quoting Williams v. New York City Hous. Auth., 61 A.D.3d 62, 78 [N.Y. App. Div. 1st Dep't 2009] [internal quotation marks and citation omitted]). Courts must "construe [the NYCHRL] . . . broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." Id. (quoting Albunio v. City of New York, 16 N.Y.3d 472, 477-78 [N.Y. 2011]). "Thus, while federal discrimination caselaw is still applicable to NYCHRL claims, it should be considered as a 'floor below which the [NYCHRL] cannot fall, rather than a ceiling above which [it] cannot rise.'" Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., No. 09 Cv. 1251 (DAB), 2011 U.S. Dist. LEXIS 84790, 2011 WL 3586060, at *5 (S.D.N.Y. July 29, 2011) (quoting Williams, 61 A.D.3d at 66-67).

For the same reasons why Plaintiff's Title VII claim of gender- and sex-based hostile work environment succeeds, Plaintiff's hostile work environment under the NYCHRL also succeeds. See, supra Point II(A).

In the event the Court finds that Plaintiff has not met his burden under Title VII, however, there are sufficient triable issues of fact for Plaintiff's NYCHRL claims to proceed to trial. Plaintiff has alleged acts by Defendant Ureña that a reasonable jury could consider sexual in nature.

Additionally, the alleged acts are far more severe than mere petty slights and inconveniences. Unwanted gestures of fellatio and anal penetration, unsolicited photos of one's buttocks, cat-calls, and purposely encroaching on one's space, are all acts of a sexual nature that were used to intimidate, belittle and demean Plaintiff.

**B. Sufficient Issues of Fact Exist Such That Summary Judgment Should Be Denied On Plaintiff's Claims of Retaliation**

NYCHRL claims for retaliation are analyzed under a similar framework to Title VII and the NYSHRL, except that a plaintiff need only show the employer's conduct was "reasonably likely to deter a person from engaging in protected activity." NYCHRL § 8-107(7); Husser v. N.Y.C. Dep't of Educ., 137 F. Supp. 3d 253, 274 (E.D.N.Y. 2015), (quoting Williams, 61 A.D. 3d 62, 71, 872 N.Y.S.2d 27 (N.Y. App. Div. 2009).

For the same reasons as in Point II(B), supra, Plaintiff has met his burden for his NYCHRL retaliation claim.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss the complaint in its entirety and allow the case to proceed to trial on all material factual issues.

Dated:      New York, New York
            July 15, 2019

                        **GLASS & HOGROGIAN LLP**
                        Attorneys for Plaintiff Agosto
                        85 Broad Street, 18th Floor
                        New York, NY 10004
                        (212) 537-6859

                        By: _____
                            Jordan F. Harlow, Esq.