USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/12/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X

JASON AGOSTO,

                            Plaintiff,

    -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION and MANUEL UREÑA,

                           Defendants.

--------------------------------------------------------------- X

**ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT,
DISMISSING CASE**

17 Civ. 9066 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Plaintiff Jason Agosto, a Social Studies teacher at the High School of Art and

Design ("HSAD") and leader of the school's union chapter, sues Defendants the New York City

Department of Education ("DOE") and HSAD Principal Manuel Ureña. Plaintiff alleges that he

was retaliated against for exercising his First Amendment freedoms of speech and association in

connection with union activities, and subjected to a hostile work environment because of his

gender. He brings claims under 42 U.S.C. § 1983 (Counts I-II); Title VII of the Civil Rights Act

of 1964 (Counts III-IV); New York State Human Rights Law ("NYSHRL") (Counts V-VI); and

New York City Human Rights Law ("NYCHRL") (Counts VII-VIII). Defendants move for

summary judgment on all claims. For the reasons discussed below, Defendants' motion is

granted as to Counts I-IV, dismissing them on the merits. Counts V-VIII are dismissed for lack

of supplemental jurisdiction.

## I. Factual Background

### a. Plaintiff's Union Activities

        Plaintiff began working at HSAD as a Social Studies teacher in 2004. Harlow

Decl. Ex. 3, ECF No. 39-4, at 9:1-5. He served as a representative and delegate for HSAD at the

United Federation of Teachers ("UFT") for several years before being elected chapter leader in 2011. Green Decl. Ex. B, ECF No. 36-5, at 11:4-22, 10:24-11:1.

In late April or early May 2016, Plaintiff and Ureña met to discuss Ureña's proposed modification of the Circular 6 ("C-6") menu, which provides teachers options for using the professional period they receive under the collective bargaining agreement ("CBA"). Green Decl. Ex. F, ECF No. 36-10, at 148:22-149:9. After Ureña proceeded with the modifications, Plaintiff filed a grievance on May 13, 2016, arguing that Ureña had modified the C-6 menu without the union approval required by the CBA. Green Decl. Ex. E, ECF No. 36-9, at DEF0582-DEF0583.[1] Plaintiff expressed his concerns to Ureña again, with others present, on May 24, 2016. Harlow Decl. Ex. 2, ECF No. 39-3, at ¶ 24. Plaintiff also participated in a May 25, 2016 protest in response to this and other perceived "labor violations." ECF No. 36-5 at 66:9-15. On May 27, 2016, Plaintiff filed a grievance requesting budgets and other administrative documents from the 2011-2014 school years. ECF No. 36-9 at P0269-P0270.

On June 8, 2017, Plaintiff filed a complaint with the New York State Public Employment Relations Board ("PERB"), alleging that Ureña directed Assistant Principal Joan Weaver to ask a probationary teacher to attend UFT chapter meetings to gather information. Green Decl. Ex. J, ECF No. 36-14, at DEF0607-DEF0608. The complaint also alleged that Weaver told the probationary teacher that Ureña "was working on terminating our chapter leader and was interested in knowing who the replacement would be." *Id.* at DEF0608. Plaintiff also filed PERB complaints regarding Ureña's alleged retaliation against him for his activities as

---

[1] Plaintiff previously had filed a grievance relating to the C-6 menu in June 2015, before Ureña became principal. ECF No. 36-9 at DEF0574.

chapter leader, *id.* at DEF0614, and Ureña's modification of the following school year's C-6 menu. *Id.* at DEF0618.

### b. Plaintiff's Evaluations

#### i. The DOE's Teacher Ratings System

Beginning with the 2013-2014 school year, HSAD teachers were evaluated under the DOE's *Advance* system, which introduced a new rating scale with the following categories: highly effective, effective, developing, and ineffective. Green Decl. Ex. V, ECF No. 36-26. At the end of each school year, teachers receive overall ratings based on the combination of their ratings for (i) Measures of Teaching Performance ("MOTP"), which is based on teacher observations over the course of the school year, and (ii) Measures of Student Learning ("MOSL"). *Id.*

Ureña became the Principal of HSAD in January 2016. ECF No. 36-10 at 43:15-17. During Ureña's tenure, many HSAD teachers began complaining about receiving lower performance ratings. ECF No. 36-5 at 58:3-11.

#### ii. Plaintiff's Performance Ratings

On May 25, 2016, the day of the union protest and the day after Plaintiff's May 24, 2016 meeting with Ureña, Ureña and Superintendent Marisol Rosales attended one of Plaintiff's classes as observers. ECF No. 39-3, at ¶ 25. The parties dispute whether the visit was planned in advance or took place in response to Plaintiff's recent union activities. *See* Plaintiff's Counterstatement to Defendants' Rule 56.1 Statement of Undisputed Facts, ECF No. 39-34, at ¶ 23. Following the May 25 observation, Ureña expressed dissatisfaction with the quality of Plaintiff's lesson and told Plaintiff that he would return to Plaintiff's class to observe him again.

3

ECF No. 39-3, at ¶ 25.  Ureña returned to observe Plaintiff on May 31, 2016 and gave Plaintiff

the following ratings:

| Component/Rationale for Score | |
|---|---|
| 1a (obs): Demonstrating knowledge of content and pedagogy<br>The evidence for this rating is delineated in the attachment to this document. | 2- Developing |
| 1e (obs): Designing coherent instruction<br>The evidence for this rating is delineated in the attachment to this document. | 1- Ineffective |
| 2a: Creating an environment of respect and rapport<br>The evidence for this rating is delineated in the attachment to this document. | 2- Developing |
| 2d: Managing student behavior<br>The evidence for this rating is delineated in the attachment to this document. | 3- Effective |
| 3b: Using questioning and discussion techniques<br>The evidence for this rating is delineated in the attachment to this document. | 1- Ineffective |
| 3c: Engaging students in learning<br>The evidence for this rating is delineated in the attachment to this document. | 1- Ineffective |
| 3d: Using assessment in instruction<br>The evidence for this rating is delineated in the attachment to this document. | 1- Ineffective |
| 4e (obs): Growing and developing professionally | N/A |

Green Decl. Ex. C, ECF No. 36-6, at DEF0280.  Prior to this evaluation, Plaintiff had never

received a rating below "effective."  ECF No. 39-4, at 31:7-12.  For the 2015-2016 school year,

Plaintiff received an overall rating of "developing," resulting in automatic placement on a

teacher improvement plan ("TIP") for the 2016-2017 school year.  ECF No. 36-10, at 206:11-18.

But for the low ratings Plaintiff received for the May 31, 2016 observation, which he claims

were "not an accurate reflection of what transpired in [his] class," he would not have received a

"developing" rating or been placed on a TIP.  ECF No. 39-3, at ¶¶ 27-29.  On December 12,

2016, Ureña again observed Plaintiff and gave him the following ratings:

| Component/Rationale for Score | |
|---|---|
| 1a (obs): Demonstrating knowledge of content and pedagogy<br>Evidence for this rating is delineated in the attachment to this report. | 1- Ineffective |
| 1e (obs): Designing coherent instruction<br>Evidence for this rating is delineated in the attachment to this report. | 1- Ineffective |
| 2a: Creating an environment of respect and rapport<br>Evidence for this rating is delineated in the attachment to this report. | 2- Developing |
| 2d: Managing student behavior<br>Evidence for this rating is delineated in the attachment to this report. | 2- Developing |
| 3b: Using questioning and discussion techniques<br>Evidence for this rating is delineated in the attachment to this report. | 2- Developing |
| 3c: Engaging students in learning<br>Evidence for this rating is delineated in the attachment to this report. | 2- Developing |
| 3d: Using assessment in instruction<br>Evidence for this rating is delineated in the attachment to this report. | 2- Developing |
| 4e (obs): Growing and developing professionally | N/A |

ECF No. 36-6, at DEF0387. Ureña's evaluations, as well as evaluations completed by other supervisors, frequently noted that Plaintiff's questions did not adequately test the depth of students' knowledge and reasoning, and that Plaintiff sometimes failed to communicate to students the criteria that were being used to assess their work.

At the end of the 2016-2017 school year, Plaintiff received an overall rating of "effective" and was not placed on a TIP. ECF No. 39-4, at 107:19-21.

### iii. Plaintiff's Letters to File

In response to a May 11, 2016 request from Ureña to provide a full week's work to a suspended student, Plaintiff provided two or three days of work. Green Decl. Ex. D, ECF No. 36-8, at DEF0276-DEF0277. Ureña met with Plaintiff and his union representative about the incident on May 17, 2017, and Plaintiff received a letter to file regarding the incident on May 27, 2016. *Id.*

Plaintiff also received a June 27, 2017 letter to file based on a June 16, 2017 email complaint from Frieda Christofides, Parent Chairperson of the School Leadership Team ("SLT"),

that Plaintiff engaged in confrontational and threatening behavior toward her during an SLT meeting. Green Decl. Ex. L, ECF No. 36-16, at P0176.

On October 23, 2017, Plaintiff received a letter to file based on a September 18, 2017 incident in which, according to the letter, Plaintiff asked Ureña multiple times, in the middle of a lesson and in the presence of students, whether he was observing Plaintiff. ECF No. 36-8, at DEF0508-DEF0509.

### c. Alleged Instances of Sexual Harassment and Retaliation

At a January 20, 2017 TIP meeting with Plaintiff, Ureña took a lollipop from a lollipop stand in his office and, according to Plaintiff, began simulating fellatio on the lollipop while staring at Plaintiff. ECF No. 39-4, at 108:2-109:24. Plaintiff filed a charge regarding the incident with the U.S. Equal Employment Opportunity Commission ("EEOC") on or about March 16, 2017. Compl. ¶ 60.

Plaintiff alleges that Ureña subsequently engaged in other inappropriate conduct, including:

- "[O]n a daily basis," Ureña would "stare at," "sneer at and make other facial gestures," "cat-call and clap at," "sing to," and "make derogatory and demeaning comments towards and about" Plaintiff. ECF No. 39-3, at ¶ 40.

- On May 1, 2017, while staring at Plaintiff, Ureña sang the words "I'll love you, tomorrow," to the tune of the song "Tomorrow" from the musical *Annie*.[2] ECF No. 39-3, at ¶ 38.

---

[2] The original lyrics are: "I love ya, tomorrow."

- Around October 2017, at a post-observation meeting, Ureña said, "Hi, Mr. Agosto" in a "feminine voice" that Plaintiff described as "[v]ery sexual, very perverted." ECF No. 39-4, at 142:7-22.

- "In or around late October of 2017, Principal Ureña followed [Plaintiff] down a hallway on the sixth floor while shouting 'it's a beautiful day,' while continuously walking closer and closer to [Plaintiff], until [they] were almost touching." ECF No. 39-3, at ¶ 39.

- On November 14, 2017, Ureña took a picture of Plaintiff from behind while Plaintiff was standing at the white board in his classroom. ECF No. 39-4, at 116:7-16.[3]

## II. Standard of Review

Summary judgment may be granted if there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, a Court must "view the evidence in the light most favorable to the party opposing summary judgment, . . . draw all reasonable inferences in favor of that party, and . . . eschew credibility assessments." *Amnesty Am. v. Town of West Hartford,* 361 F.3d 113, 122 (2d Cir. 2004).

"On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial.'" *Rueda v. City of New York,* 2017 WL 4221081, at *4 (S.D.N.Y. Sept. 21, 2017) (quoting

---

[3] The photograph does not appear to be part of the record.

*Anderson*, 477 U.S. at 256).  "When the moving party has carried its burden . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## III.  Discussion

### a.  First Amendment Claims

Plaintiff brings two claims under 42 U.S.C. § 1983, alleging that Defendants retaliated against him for his protected speech on behalf of the UFT (Count I), and for his association with, and participation in, the UFT (Count II).  I analyze the free-speech and association claims together.  *See Lynch v. Ackley*, 811 F.3d 569, 583 (2d Cir. 2016) ("[Plaintiff's] claim based on his First Amendment association rights is subject to the same analysis . . . for [his] First Amendment free-speech right based on the same incident."); *Melzer v. Bd. of Educ. of City Sch. Dist. of City of New York*, 336 F.3d 185 (2d Cir. 2003) (holding that "hybrid" associational/speech claims are subject to the same analysis as First Amendment speech).

"To state a prima facie case of retaliation under § 1983, a plaintiff must demonstrate that:  (1) his . . . speech was constitutionally protected; (2) he . . . suffered an adverse employment action; and (3) a causal connection exists between the speech and the adverse employment action so that it can be said that the speech was a motivating factor in the determination." *Washington v. Cty. of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004).  Defendants argue that (i) Plaintiff did not engage in protected speech; (ii) Plaintiff did not suffer an adverse employment action; (iii) there was no causal nexus between any protected speech and any adverse employment action; (iv) as to the DOE, there was no municipal policy or practice of retaliation; and (v) as to Ureña, qualified immunity shields him from liability because he did not

violate a clearly established constitutional right of which a reasonable person would have known. Although issues of fact preclude summary judgment on points (i)-(iii), I agree that Defendants are entitled to summary judgment based on points (iv) and (v), and therefore dismiss Plaintiff's section 1983 claims.

### i.  Protected Speech

Determining whether a public employee engaged in protected speech requires a two-step inquiry:  (1) "determining whether the employee spoke as a citizen on a matter of public concern" and, if so, (2) determining, under the test set forth in *Pickering v. Board of Education*, 391 U.S. 563 (1968), whether the employer has shown "adequate justification for treating the employee differently [based on his or her speech] from any other member of the general public." *Montero v. City of Yonkers, New York*, 890 F.3d 386, 395 (2d Cir. 2018) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).  In assessing whether a public employee speaks as a citizen, "[t]he critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id.* at 398 (quoting *Lane v. Franks*, 573 U.S. 228, 240 (2014)).  For speech to be on a matter of public concern, it must "be fairly considered as relating to any matter of political, social, or other concern to the community." *Id.* at 399 (quoting *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir. 2011)).  "On the other hand, speech that principally focuses on an issue that is personal in nature and generally related to the speaker's own situation, or that is calculated to redress personal grievances—even if touching on a matter of general importance—does not qualify for First Amendment protection." *Id.* at 399-400 (internal citations and quotation marks omitted).

Plaintiff's grievances regarding the CBA, particularly in connection with Ureña's implementation of the C-6 menu and Plaintiff's request for budgetary and other documents, may

well constitute protected speech. The C-6 menu grievance involved a dispute over the role of the union in approving changes to HSAD policy, and Plaintiff's personal stake in the matter related primarily to his duties as the UFT chapter leader, not as a teacher. Similarly, Plaintiff's document request suggests a general purpose of examining the school's budget and other documents, not an expression of dissatisfaction with his or his colleagues' terms or conditions of employment. Accordingly, under the first step of the inquiry, Plaintiff has made a sufficient showing that his "advocacy on behalf of fellow teachers was not aimed at redressing his own grievances, but was undertaken as a representative of the teachers' union." *See Pekowsky v. Yonkers Bd. of Educ.*, 23 F. Supp. 3d 269, 278-79 (S.D.N.Y. 2014) (holding that "insisting on union representation for teachers, and opposing [a] compensation proposal regarding extracurricular supervision" were protected speech); *see also Montero*, 890 F.3d at 401 (holding that union-affiliated police officer's expression of opposition to police commissioner's personnel cuts and call for no-confidence vote, made at union meeting in his capacity as union vice president, plausibly could constitute protected speech, despite personal rivalry between officer and commissioner).[4]

### ii. Adverse Employment Action

"In the context of a First Amendment retaliation claim, . . . only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." *Wrobel v. Cty. of Erie*, 692 F.3d 22, 31 (2d Cir. 2012) (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006)). Such conduct must be "more than de minimis," *Zelnik*, 464 F.3d at 226, and includes "discharge, refusal to hire, refusal to promote, reduction in pay, and reprimand, as well as some lesser

---

[4] Defendants do not contend that Plaintiff's claim fails under the second step's *Pickering* analysis, and I therefore do not consider that issue.

sanctions, such as failure to process a teacher's insurance form, demotion, reassignment to a place that aggravated physical disabilities, and express accusations of lying." *Wrobel*, 692 F.3d at 31.

The negative performance ratings given to Plaintiff, which resulted in his placement on a TIP, and the negative letters to file received by Plaintiff would deter a similarly situated individual of ordinary firmness from exercising his or her First Amendment rights. Even putting aside Plaintiff's allegations of harassment, this conduct easily meets the low threshold required to establish an adverse employment action.

### iii.   Causal Nexus

"A plaintiff may establish causation either directly through a showing of retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse action." *Novick v. Vill. of Wappingers Falls, New York*, 376 F. Supp. 3d 318, 331 (S.D.N.Y. 2019) (quoting *Smith v. County of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015)).

Plaintiff filed the C-6 menu grievance on May 13, 2016, and engaged in other advocacy over the following days, including meeting with Ureña to discuss the CBA and participating in a union protest.  On May 25, 2016, Ureña and Rosales visited Plaintiff's classroom, and on May 31, 2016, Ureña returned to observe Plaintiff and recorded his negative ratings.  The proximity of these events to Plaintiff's protected speech is sufficient to create an issue of fact regarding causality.

### iv.   *Monell* Claims Against the DOE

"To bring a section 1983 lawsuit for municipal liability, 'a plaintiff must prove that action pursuant to official municipal policy caused the alleged constitutional injury.'" *Hu v.*

*City of New York*, 927 F.3d 81, 104 (2d Cir. 2019) (quoting *Cash v. Cty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011)). Defendants argue that the DOE is entitled to summary judgment on Plaintiff's section 1983 claims because Plaintiff has failed to show that a DOE policy, practice, or custom caused the alleged violations of his First Amendment rights.

"[E]ven a single action by a decisionmaker who possesses final authority to establish municipal policy with respect to the action ordered may deprive the plaintiff of his or her constitutional rights." *Id.* at 105 (quoting *Montero*, 890 F.3d at 403 (2d Cir. 2018)). "The question of whether an official 'possessed final policymaking authority is a legal question, which is to be answered on the basis of state law, including state and local positive law, as well as custom or usage having the force of law.'" *Id.* (quoting *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000)) (internal alterations omitted). Although "a public school principal may be a final policymaker where the 'harm that befell the plaintiff was under the principal's control,'" "[w]here the final authority for a particular matter is not within the principal's control or is subject to review by another official or entity, the principal is not the final policymaker with respect to that matter." *Eldridge v. Rochester City Sch. Dist.*, 968 F. Supp. 2d 546, 562 (W.D.N.Y. 2013) (quoting *Zambrano–Lamhaouhi v. New York City Bd. of Educ.*, 866 F. Supp. 2d 147, 175 (E.D.N.Y. 2011)).

Ureña's teacher performance ratings are reviewable both through an appellate process and by an "independent validator," and thus are not final. *See* N.Y. Educ. Law § 3012-c(5-a). Moreover, even if Ureña's evaluation decisions were unreviewable, his status as a final *decisionmaker* with respect to teacher evaluations would not make him the final *policymaker*: by allegedly giving Plaintiff inaccurate ratings under New York's *Advance* system, Ureña would have been frustrating, not implementing, the teacher evaluation policies established by the state

legislature and at higher levels of the DOE administration. *See Roe v. City of Waterbury*, 542

F.3d 31, 37 (2d Cir. 2008) ("[T]he agent's actions must implement rather than frustrate the

government's policy.") (quoting *Auriemma v. Rice*, 957 F.2d 397, 400 (7th Cir. 1992)); *Hurdle v.*

*Bd. of Educ. of City of New York*, 113 F. App'x 423, 427 (2d Cir. 2004) ("That a particular agent

is the apex of a bureaucracy makes the decision 'final' but does not forge a link between

'finality' and 'policy.'") (quoting *Auriemma*, 957 F.2d at 400); *City of St. Louis v. Praprotnik*,

485 U.S. 112, 127 (1988) ("When an official's discretionary decisions are constrained by

policies not of that official's making, those policies, rather than the subordinate's departures

from them, are the act of the municipality."). As for Ureña's letters to file regarding Plaintiff's

misconduct, the issuance of a handful of disciplinary letters does not constitute municipal policy.

*See Jeffes*, 208 F.3d at 60-61 (expressing agreement with the view that a supervising sheriff

would not be a final policymaker "if the complaint were simply that plaintiffs had been subjected

to unwarranted formal discipline"). Accordingly, Plaintiff's *Monell* claims against the DOE are

dismissed.

### v.  Qualified Immunity

"Qualified immunity . . . shields officials from personal liability for civil damages

so long as 'their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known.'" *Montero*, 890 F.3d at 402 (quoting *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982)). "The need for clearly established law is satisfied if the

law on the subject was defined at the time with reasonable clarity or clearly foreshadowed in

rulings of the Supreme Court or the Second Circuit, so that the defendant should have understood

that her conduct was unlawful." *Id.* (quoting *Lynch v. Ackley*, 811 F.3d 569, 578-79 (2d Cir.

2016)) (internal quotation marks and alterations omitted).

Plaintiff's First Amendment right to engage in the speech at issue was not clearly established at the time Ureña engaged in the allegedly retaliatory conduct. *Montero* had not yet been decided,[5] and the Court's leading case in the union grievance context had held that the grievance at issue was *not* protected speech, emphasizing that the plaintiff did not speak as a private citizen. *See Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York*, 593 F.3d 196, 201 (2d Cir. 2010) ("[Plaintiff], by filing a grievance with his union to complain about his supervisor's failure to discipline a child in his classroom, was speaking pursuant to his official duties and thus not as a citizen."). *Montero* held that a police officer's union activities in opposition to the department's management decisions were protected speech, but acknowledged that "the role of a citizen analogue in determining whether one speaks as a citizen remained murky" after *Weintraub*. 890 F.3d at 402; *see also Payson v. Bd. of Educ. of Mount Pleasant Cottage Sch., USFD*, No. 14 Civ. 9696 (JCM), 2017 WL 4221455, at *16 (S.D.N.Y. Sept. 20, 2017) ("Depending on the context of the union-related speech, courts have ruled both ways on whether it is speech of a public employee or a private citizen."). Accordingly, the Court held that the police lieutenant and sergeant who participated in retaliating against the officer were entitled to qualified immunity. *Id.* I therefore hold, consistent with *Montero*, that Ureña is protected from liability for violations of Plaintiff's First Amendment rights by qualified immunity.

### b.  Title VII Claims

#### i.  Hostile Work Environment

"To establish a prima facie case of hostile work environment [under Title VII], the plaintiff must show that the discriminatory harassment was 'sufficiently severe or pervasive

---

[5] Plaintiff filed this lawsuit on November 20, 2017, and *Montero* was decided on May 16, 2018.

to alter the conditions of the victim's employment and create an abusive working environment.'" *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)).  A court must "consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).  "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.  Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Id.* (quoting *Alfano v. Costello*, 294 F.3d 365, 375 (2d Cir. 2002)).

Plaintiff claims that the January 20, 2017 lollipop incident and other alleged instances of harassment by Ureña created a hostile work environment.  However, Plaintiff has not demonstrated that Ureña's conduct—provocatively eating a lollipop, singing songs to Plaintiff that are not sexual in nature, greeting Plaintiff in a "feminine voice," taking a photograph of Plaintiff at a white board during a classroom observation, and making unspecified "derogatory and demeaning comments"—targeted him because of his membership in a protected class, or met the threshold of severity or pervasiveness required to establish a prima facie case of hostile work environment.  Plaintiff's Title VII hostile work environment claim is dismissed.

### ii.  Retaliation Claims

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) sets forth a three-step framework for analyzing Title VII discrimination and retaliation claims. *See Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) (holding that the *McDonnell Douglas* framework "developed in the context of claims for discrimination under Title VII [also]

applies to . . . claims of retaliation under Title VII"). First, the plaintiff must establish a prima

facie case by showing that: "(1) he is a member of a protected class; (2) he was qualified for the

position he held; (3) he suffered an adverse employment action; and (4) the adverse action took

place under circumstances giving rise to an inference of discrimination." *United States v. City of*

*New York*, 717 F.3d 72, 102 (2d Cir. 2013) (quoting *Ruiz v. Cnty. of Rockland*, 609 F.3d 486,

492 (2d Cir. 2010)). If the plaintiff can establish a prima facie claim, the burden shifts to the

defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.

*Id.* (citing *McDonnell Douglas*, 411 U.S. at 802). If the defendant meets its burden, the burden

shifts back to the plaintiff to show that the "proffered reason" for the adverse employment action

was "a pretext for discrimination." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804).

Plaintiff claims that the retaliation against him included (i) creation of a hostile

work environment and (ii) "issuance of less-than effective performance evaluations [and]

unwarranted letters to file." Compl. ¶ 99. As discussed above, Defendants are entitled to

summary judgment on the hostile work environment claim. Regarding Plaintiff's negative

performance evaluations and letters to file, the circumstances under which those actions were

taken do not give rise to an inference that Defendants retaliated against Plaintiff for his

complaints of gender-based discrimination. By the time Plaintiff filed his EEOC complaint on

March 16, 2017, he had already received negative performance ratings, been placed on a TIP,

and received a negative letter to file. Plaintiff did not receive additional letters to file until

several months after he filed the complaint, and those letters issued soon after the conduct by

Plaintiff that gave rise to them. Accordingly, Plaintiff's Title VII retaliation claim is dismissed.

### c.  NYSHRL and NYCHRL Claims

Having granted summary judgment to Defendants on Plaintiff's federal claims, I decline to exercise supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims. *See, e.g., Ziyan Shi v. Dep't of State, Div. of Licensing Servs.*, No. 18 Civ. 3455 (LGS), 2019 WL 1570733, at *10 (S.D.N.Y. Apr. 11, 2019).  Those claims are dismissed without prejudice.

## IV.  Conclusion

For the reasons stated above, Defendants' motion for summary judgment is granted on Counts I-IV; Counts V-VIII are dismissed without prejudice.  The Clerk shall terminate the open motion (ECF No. 36) and mark the case closed.

SO ORDERED.

Dated:       August 9, 2019
             New York, New York                ALVIN K. HELLERSTEIN
                                               United States District Judge